Kenneth A. Hill
Quilling, Selander, Lownds,
  Winslett & Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas  75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)
ATTORNEYS FOR THE TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| LATITUDE SOLUTIONS, INC., | § | CASE NO. 12-46295-rfn7 |
| | § | |
| DEBTOR. | § | |

**TRUSTEE'S MOTION FOR AUTHORITY TO INCUR
UNSECURED DEBT, COMBINED WITH BRIEF IN SUPPORT**

TO THE HONORABLE RUSSELL F. NELMS, UNITED STATES BANKRUPTCY JUDGE:

Carey Ebert (the "Trustee"), in her capacity as the chapter 7 trustee for Latitude Solutions, Inc. (the "Debtor"), files this Motion for Authority Incur Unsecured Debt, Combined with Brief in Support (the "Motion"), and in support thereof would respectfully show unto this Court as follows:

**I.  BACKGROUND**

1. On November 9, 2012, the Debtor filed a voluntary petition in this Court for relief under chapter 7 of the United States Bankruptcy Code.  The Trustee was appointed the chapter 7 trustee, and she continues to serve in that capacity.

2. The Debtor is a publicly traded corporation.  Prior to the bankruptcy filing, the Debtor designed, manufactured, and leased industrial water purification units (the "Units") for the purpose of water remediation.  The Debtor's bankruptcy estate includes approximately fifteen complete (or nearly complete) water purification Units and the intellectual property,

equipment, machinery, parts, and chemicals related to the water purification business. Most of the Debtor's tangible assets are located at leased premises in Colorado Springs, Colorado and Searcy, Arkansas. The Trustee is concerned about the preservation of these assets because the Units are very valuable (costing approximately $500,000 or more to manufacture) and because some of the Units were vandalized, cannibalized, and/or harmed prior to the Trustee's appointment and prior to her ability to take possession of the assets. The Trustee desires to insure that no further damage is done to any of these Units and that they are preserved for either their subsequent sale by the Trustee or their utilization in any chapter 11 reorganization effort, as will be explained below.

3. The Trustee has been working diligently to investigate, evaluate, and administer the Debtor's bankruptcy estate. The Trustee (a) held an original and one continued meeting of creditors, (b) conducted additional investigations of the Debtor's assets, liabilities, and financial affairs, (c) located, took control of, and secured computers, books and records, vehicles, machinery, and equipment of the Debtor, (d) engaged counsel, accountants, and two auctioneers to assist her in the case, and (e) filed motions to sell some of the Debtor's assets by public auction.

4. A hearing was held on February 19, 2013 on the Trustee's motion to sell eleven of the Debtor's water purification Units and related equipment, machinery, and parts at the Searcy, Arkansas location. Two groups of the Debtor's shareholders objected, arguing that the Trustee should delay the sale to explore leasing options and possibly convert the case to chapter 11. At the request of both groups of objecting shareholders, the Trustee agreed to postpone the hearing to consider the shareholders' proposals.

5. One group of those shareholders, which is represented by John Anderson (collectively, the "Anderson Shareholders"), stated their intention to request conversion of the Debtor's case to chapter 11, obtain post-petition financing, re-start the Debtor's business, and propose a chapter 11 plan that will pay all creditors in full. The Anderson Shareholders informed the Trustee that they have the ability to obtain post-petition financing and re-start the Debtor's business if the case is converted to chapter 11. They informed the Trustee that they intend to move quickly and will be able to have a hearing on a motion to convert within the next 30 to 45 days (subject, of course, to this Court's schedule).

6. The Trustee believes that creditors will likely receive a higher distribution if the Anderson Shareholders are able to succeed in converting the case to chapter 11 and re-starting the Debtor's business, compared to what creditors would likely receive through immediate liquidation in chapter 7. The Trustee also believes that the Anderson Shareholders have a reasonable possibility of succeeding in their goals. Therefore, the Trustee believes it will be in the best interest of creditors and the bankruptcy estate to allow the Anderson Shareholders a reasonable opportunity to pursue their goals.

7. Based upon information from the Anderson Shareholders and counsel for the other group of shareholders that objected to the Trustee's sale motion, the Trustee believes there may be opportunities to lease some of the Debtor's water purification Units to third parties on terms that will be favorable to creditors and the bankruptcy estate. Even if the efforts of the Anderson Shareholders to convert the case and try to confirm a chapter 11 plan fail, the Trustee needs to borrow monies in order to preserve the Units and generate funds for payment of creditors by operating the business under section 721 of the Bankruptcy Code for a limited period.

8. This will enhance the Trustee's ability to gain the highest and best price for the estate property in the event of a subsequent sale, if the reorganization efforts prove unfruitful. In order to operate the business, the Trustee is in need of immediate funds, not only to make the Units ready for lease, but also to pay for the costs, preservation, and storage needed for these Units and the other property of the estate. Further, the Trustee needs to borrow money for these efforts immediately, because she has past-due and ongoing administrative expenses relating to costs of storage of the Units and other property of the estate.

9. The Trustee needs immediate additional funds to protect and preserve the Debtor's assets. Specifically, among other things, the Debtor's bankruptcy estate will incur post-petition rent at the Colorado and Arkansas locations and will have to pay a person to monitor the Debtor's assets at the Arkansas location.

10. One of the Anderson Shareholders, Ralph Kidd (the "Lender"), recently transferred $30,000.00 (the "Loan") to the Trustee to use as a post-petition loan (subject, of course, to this Court's approval) to protect and preserve the Debtor's assets until rulings can be obtained on conversion of the case and chapter 11 post-petition financing; and if the reorganization effort fails, to protect and preserve these assets to gain the highest and best price if the Trustee ultimately liquidates this estate property. The terms of the proposed loan are:

    (a)    No interest.

    (b)    Allowable under 11 U.S.C. § 503(b)(1) as an administrative expense, but to be repaid only as follows:

        (i)    If this case is converted to chapter 11 and a chapter 11 plan is confirmed, the Lender will receive a 10% non-dilutable portion of all equity securities in the reorganized Debtor, whether common stock, preferred stock, or

any other form of options, warrants, or rights to stock (hereinafter the "Equity") in the reorganized Debtor. The Equity will be non-dilutable upon approval by the Court in consideration for the $30,000.00 Loan made to the Trustee as an administrative loan. The Loan will be solely satisfied through the conversion of the Loan to the non-dilutable 10% Equity in the reorganized Debtor, if this case is converted to chapter 11 and a plan of reorganization is subsequently confirmed.

(ii)    If this case is not converted to chapter 11 or if a chapter 11 plan is not confirmed, then the entire loan will be forgiven without any further obligation of the Trustee or the Debtor's bankruptcy estate.

(c)    No subsequent order of this Court, no provision of any chapter 11 plan subsequently confirmed, nor any provision of any confirmation order subsequently issued herein, confirming a chapter 11 plan for the above debtor in the future will be allowed to modify or alter the provisions of this order, approving the $30,000 Loan and its repayment in the form of a non-dilutable 10% portion of the Equity in the reorganized Debtor granted to the Lender; and this Order will be deemed a Final Order.  No subsequent order of this Court or chapter 11 plan or confirmation order of a plan issued subsequent to this Order will be allowed to alter or impair in any way the aforesaid Equity to be issued to the Lender in repayment of the Loan as described in this Motion without the express written consent of the Lender.

11.    Concurrently with the filing of this motion, the Trustee is filing a separate motion requesting authority to operate the business of the Debtor for a limited period of time under section 721 of the Bankruptcy Code.  Thus, under section 364(a), the Trustee should be able to obtain unsecured credit both in the ordinary course of business and, to the extent the financing

requested hereunder is outside the ordinary course of business, section 364(b) states that the Court, after notice and a hearing, may authorize the Trustee to obtain unsecured credit other than in the ordinary course of business as an administrative expense; and in view of the special terms of the $30,000 Loan in this situation, the Trustee prays for an order under section 364 of the Bankruptcy Code to authorize the Loan described above.

12. The proposed $30,000 Loan will provide needed immediate funding to the Trustee in order to pay for the costs for and preservation of the estate property, which will both enhance the possibility of a successful reorganization effort or, in the event that reorganization does not occur, the aforesaid $30,000 Loan will enhance and preserve the value of the property of the estate and, therefore, enhance the Trustee's ability to gain the highest and best price for the estate property when sold. The $30,000 Loan is both vital to the preservation and maintenance of the property of the estate and its value, as well as to preserving and maintaining the potential going concern value of the Debtor in order to help facilitate the possibility of converting the case to chapter 11 and confirming a plan of reorganization.

13. The Trustee has an immediate need of the $30,000 Loan and knows of no other source for such immediate funding on such favorable terms and conditions which preclude any risk that unsecured creditors may be prejudiced or that any dividend to unsecured creditors might be diminished by the repayment of this Loan. The proposed $30,000 Loan is not only the most immediate source of funding to cover costs of preservation and storing the estate's assets, but the terms and conditions are extremely favorable and this motion reflects the Trustee's exercise of her business judgment consistent with her fiduciary duties. The immediate granting of this motion is clearly in the best interest of the estate and all creditors. The $30,000 Loan constitutes reasonable equivalent value and fair consideration for the non-

dilutable 10% Equity in the reorganized Debtor to which the Lender will be solely entitled for the satisfaction of this Loan because the Lender takes the risk that this case might not be converted to chapter 11 and that a chapter 11 plan of reorganization might not be confirmed. The Lender is acting in good faith and is entitled to the protection provided by section 364(e) of the Bankruptcy Code. The Trustee and the Lender have acted in good faith and negotiated the terms of this $30,000 Loan on an arms-length basis.

14. The Trustee requests that an expedited hearing be set on this motion because the funds are needed immediately to preserve and protect the property of the estate. The Trustee will give immediate notice to all creditors and parties-in-interest listed on the Master Matrix list filed by the Debtor and preserved by the Clerk of Court, if an expedited hearing is granted on this motion.

## II. ARGUMENT AND AUTHORITIES

15. Pursuant to section 364(b) of the Bankruptcy Code, "[t]he Court, after notice and hearing, may authorize the trustee to … incur unsecured debt other than [in the ordinary course of business], allowable under section 503(b)(1) of this title as an administrative expense."

16. The Trustee believes that authorizing the Trustee to operate the Debtor's business for a limited time will allow the Trustee to request and gain financing under section 364 of the Bankruptcy Code for the cost of preservation of these valuable assets (which will be necessary in the event they are liquidated to gain the highest and best value for such Units in order to generate the largest amount of monies to pay unsecured creditors) and will allow the Anderson Shareholders an opportunity to pursue their goals of converting the case to chapter 11 and obtaining chapter 11 post-petition financing. This $30,000 Loan is extremely favorable to the

creditors in this case because repayment is payable only in stock of the reorganized Debtor. There is no risk to unsecured creditors.

### III.  CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Trustee requests that this Court enter an order (a) authorizing her to incur unsecured debt under section 364(b) of the Bankruptcy Code in the amount of $30,000.00 on the terms stated above and (b) granting the Trustee such other and further relief, at law or in equity, to which she may be justly entitled.

> Respectfully submitted,
>
> QUILLING, SELANDER, LOWNDS,
>   WINSLETT & MOSER, P.C.
> 2001 Bryan Street, Suite 1800
> Dallas, Texas 75201
> (214) 871-2100 (Telephone)
> (214) 871-2111 (Facsimile)
> By: */s/ Kenneth A. Hill*
>      Kenneth A. Hill
>      State Bar No. 09646950
>
> ATTORNEYS FOR THE TRUSTEE

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served concurrently with filing (a) by ECF upon all persons who have filed ECF appearances in this case and (b) by first class mail, postage prepaid, on the persons and entities set forth on the attached service list.  The service list is omitted from service copies to avoid unnecessary copying and postage charges, but a copy can be obtained free of charge by making a written request to Charity DeVille at Quilling, Selander, Lownds, Winslett & Moser, P.C., 2001 Bryan Street, Suite 1800, Dallas, Texas 75201, fax (214) 871-2111, e-mail cdeville@qslwm.com.

> */s/ Kenneth A. Hill*
> Kenneth A. Hill

4849-0951-7075, v.  2